UNITED STATES of America,
Plaintiff–Appellee,

v.

Frido SEESING, Defendant–Appellant.

Nos. 98–30233, 98–36189.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 11, 2000

Filed Dec. 8, 2000

As Amended Jan. 29, 2001.

Bryan Norcross, Lincoln, Montana, for the defendant-appellant.

C. Ed Laws, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee.

Before: SCHROEDER, BEEZER, and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

United States prisoner Frido Seesing ("Seesing") appeals: (1) the district court's sentencing calculations; (2) the validity of his guilty plea as to violation of 18 U.S.C. § 924(c)(1) (use of a firearm during and in relation to a drug trafficking offense); and (3) the district court's recharacterization of a pro se letter seeking to withdraw his pleas of guilty to the entirety of the six count indictment as a motion for relief from the sentence and conviction under 28 U.S.C. § 2255. We reverse, vacate the sentence, and remand.

### Facts and Procedural History

Seesing pleaded guilty to six counts based on his participation in a narcotics conspiracy. On June 5, 1998, the district court held a sentencing hearing at which the prosecution made an offer of proof and the court engaged in a plea colloquy with Seesing. At the conclusion of the hearing, Seesing was sentenced to 181 months imprisonment and five years supervised release.

In a handwritten letter to the court, dated June 15, 1998, Seesing stated that he was "withdrawing [his] plea of guilty to all counts. . . ." The letter denies the court's jurisdiction over Seesing, maintaining that he has "no part in your constitutions, court, rules, states, contracts, covenants. . . ." Instead, Seesing acknowledges "only obligations to my creator, Yahweh. . . ."

The letter is stamped indicating that it was filed by the district court clerk on July 20, 1998. On that same date, the district court filed an order recharacterizing the letter as a motion for relief from the sentence and conviction under 28 U.S.C. § 2255. In the same order, the court denied the motion. Seesing later filed a motion requesting that the court reconsider its recharacterization of the letter. The court denied this motion on August 11, 1998.

### Standards of Review

■ The district court's interpretation of the Sentencing Guidelines is reviewed de novo. *See United States v. Smith,* 175 F.3d 1147, 1148 (9th Cir.1999). Grouping of offenses under the Guidelines is also reviewed de novo. *See United States v. Boos,* 127 F.3d 1207, 1209 (9th Cir.1997). The district court's factual findings in the sentencing phase are reviewed for clear error, while application of the Guidelines to the facts is reviewed for abuse of discretion. *See United States v. Frega,* 179 F.3d 793, 811 n. 22 (9th Cir. 1999). The adequacy of a Rule 11 plea hearing is reviewed de novo, *see United States v. Alber,* 56 F.3d 1106, 1109 (9th Cir.1995), as is whether the plea colloquy satisfied Rule 11's requirements. *See United States v. Longoria,* 113 F.3d 975, 976 (9th Cir.1997). Finally, we review de novo the denial of an 28 U.S.C. § 2255 motion. *See United States v. Benboe,* 157 F.3d 1181, 1183 (9th Cir.1998).

### Analysis

I. Sentencing Calculation Pursuant to Sentencing Guidelines § 2D1.1(a)(3)

*United States v. Petty,* 992 F.2d 887, 890 (9th Cir.1993), establishes the standard to determine the quantity of narcotics to be attributed to an individual member of a conspiracy for sentencing purposes:

Under the Guidelines each conspirator, for sentencing purposes, is to be judged not on the distribution made by the entire conspiracy, but on the basis of the quantity of drugs which he reasonably foresaw or which fell within "the scope" of his particular agreement with the conspirators.

*See also United States v. Ladum,* 141 F.3d 1328, 1346 (9th Cir.1998) (applying *Petty*); *United States v. Diaz–Rosas,* 13 F.3d 1305 (9th Cir.1994) (a defendant need not have personally possessed the narcotics so long as the narcotics possessed or sold were foreseeable to him); U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(B) (2000) (in the case of a conspiracy, base offense level shall be determined on the basis of "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

■ The district court found that Seesing was convicted of distributing at least three but less than ten kilograms of methamphetamine. The Presentence Investigation Report ("PIR"), the sole source of facts before the district court at sentencing, stated that the actual amount was 4.049 kilograms. Seesing argues that, contrary to *Petty*, no factual findings were made by the court to support this determination.

The PIR based its amount determination on two facts—$70,000 in Comcheck transfers made among the co-conspirators and a purchase price of $8,500 per pound of methamphetamine. According to the PIR, the $70,000 in Comcheck transfers relate to the amount of money received by co-defendant John Girsch ("Girsch") in over sixty transactions between November 1994 and early 1997, fourteen involving Seesing and twenty-four involving two other co-conspirators. Girsch sent the methamphetamine to the co-conspirators via Federal Express. The co-conspirators, including Seesing, then sent payments to Girsch via Federal Express or Comcheck.

■ "In most cases, the government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence." *United States v. Romero–Rendon,* 220 F.3d 1159, 1160 (9th Cir.

2000). Under a preponderance of the evidence standard in sentencing determinations, "the relevant facts must be shown to be more likely true than not." *United States v. Lawrence,* 189 F.3d 838, 844 (9th Cir.1999); *see also United States v. Mezas de Jesus,* 217 F.3d 638, 643 (9th Cir.2000) ("[T]he preponderance of the evidence standard is a meaningful one that requires the judge to be convinced by a preponderance of the evidence that the fact in question exists.") (internal quotations omitted).

The preponderance of the evidence standard was not met here because the district court failed to find that Seesing reasonably foresaw all the transactions that comprised the $70,000 figure upon which the amount of methamphetamine attributed to Seesing was based. The relevant facts were not "shown" to be more likely true than not. The district court made no reference to the PIR, including whether it was convinced by the PIR's findings. Accordingly, this portion of Seesing's sentence is vacated and the matter is remanded to the district court for a determination on the amount of methamphetamine reasonably foreseeable to Seesing.[1]

## II. Sentencing Enhancement Under Sentencing Guideline § 2K2.1(b)(4)

■ The district court properly divided Seesing's offenses into three Groups. Group I contained: Count 1 (conspiracy to manufacture, distribute or dispense, or possess with intent to manufacture, distribute or dispense methamphetamine, a violation of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 2); Count 3 (use of a communication facility in causing, aiding, or facilitating the distribution with intent to distribute methamphetamine, a violation of 18 U.S.C. § 834(b)); and Count 4 (laundering of monetary instruments, a viola-

tion of 18 U.S.C. §§ 2 and 1956(a)(1)(A)(1)). Group II contained Count 5 (possession of an unregistered firearm, a violation of 26 U.S.C. §§ 5841 and 5861(d)) and Count 6 (possession of a (homemade) silencer not identified by a serial number, a violation of 26 U.S.C. § 5861(i)). Count 2 (use or possession of a firearm during or in relation to a drug trafficking offense, a violation of 18 U.S.C. § 924(c)(1)), was treated separately because Sentencing Guideline § 2K2.4 provides that a mandatory five-year sentence runs consecutive to any other sentence for a violation of 18 U.S.C. § 924(c)(1).

Sentencing Guidelines § 2K2.1(b)(4) provides that the base offense level should be increased two levels if a firearm used in the offense "was stolen, or had an altered or obliterated serial number...." Seesing contends that the district court erred in applying the two-level adjustment to both Groups I and II because his silencer was homemade and thus never had a serial number that could be altered or obliterated. Because Seesing failed to object to the enhancement in the district court, we review for plain error. *United States v. Randall,* 162 F.3d 557, 561 (9th Cir.1998). While we understand the district court's desire to respect the underlying purpose of Guidelines § 2K2.1(b)(4), discouraging the use of untraceable weaponry, and agree that this purpose is frustrated by the use of homemade silencers without serial numbers, the plain language of the Guideline is clear. The government does not argue that Seesing's silencer had any serial number, much less one that was altered or obliterated. Thus, applying the Guideline was plain error. *See United States v. Bakhtiari,* 913 F.2d 1053, 1063 (2d Cir. 1990). While we are concerned about this apparent loophole in the Guidelines, "repair" is the job of the Sentencing Commission, not the court. At resentencing, the

---

1. Because reversal is warranted under plain error review as well as de novo review, we

need not consider whether Seesing properly objected to any findings in the PIR.

two-level enhancement found at Guidelines § 2K2.1(b)(4) should not be applied to Group I or Group II.[2]

III. Voluntariness of Plea as to 18 U.S.C. § 924(c)(1)

A. Federal Rule of Criminal Procedure 11(c)(1)

Rule 11(c)(1) provides, in pertinent part:

(c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered. . . .

"Rule 11 places the obligation on the district judge to comply with the requirements of the rule in order to assure that the plea is knowing and voluntary." *United States v. Odedo*, 154 F.3d 937, 940 (9th Cir.1998). "The purpose of Rule 11(c) in requiring the judge to inform the defendant in open court of the nature of the charges and other matters is to create a record complete on its face, to forestall later attacks on the plea." *United States v. Smith*, 60 F.3d 595, 598 (9th Cir.1995). In this regard, "[i]t is incumbent upon a district judge accepting a plea to make the minor investment of time and effort necessary to set forth the meaning of the charges and to demonstrate on the record that the defendant understands [the precise nature of the plea]." *United States v. Kamer*, 781 F.2d 1380, 1385 (9th Cir.1986).

At Seesing's plea colloquy, the district court asked the government to describe its proof. As to Count 2, the government stated: "Testimony would indicate that during the course of dealing narcotics, methamphetamine, to David Clausen, that Frido Seesing had on him this particular weapon with the laser site [sic]. . . . As I have said, during the period of his conspiracy, Frido Seesing did deal methamphetamine, and at the time

he was carrying a semi-automatic handgun that I've just described."

At the conclusion of the government's statement of proof for all the charges, the court addressed Seesing: "You have heard the comments by the U.S. Attorney, Mr. Seesing, as to the proof they have in the event this case went to trial. Is there anything you want to change and correct or is that substantially the way events transpired?" Seesing replied, "Yeah, that's pretty much how it. . . ."

The court then proceeded, count by count, to ask Seesing if he was pleading guilty as charged. With respect to Count 2, the court said, "And then as to Count 2 it says that you, Frido J. Seesing, did carry or use a firearm during drug trafficking. You heard the testimony of—or excuse me, the offer of proof made by the assistant U.S. Attorney there. Do you admit or deny that?" Seesing responded, "Yes sir, I had it with me. It was not to threaten."

In *Smith*, the prosecution made an offer of proof as well and the defendant "[u]nquestionably . . . was informed of, and admitted, the facts underlying his plea." *Smith*, 60 F.3d at 597. The court held, however, that "an admission of the facts does not speak to the nature of the charge. '[B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.' " *Id.* (quoting *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)).

Section 924(c)(1) has two components which must be satisfied. Seesing must have understood that he was pleading guilty to having (1) "use[d] or carrie[d]" the firearm (2) "during and in relation to any . . . drug trafficking crime." *Id.* It is clear that Seesing understood the "carry" component, as he admitted having the weapon on his person. *See United States v. Lopez*, 100 F.3d 98, 101 (9th Cir.1996) ("[I]n order to convict a defendant under

---

**2.** We note that the district court miscalculated the base offense level for Group I. If Seesing is found on remand to have distribut-
ed between three and ten kilograms of methamphetamine, the base offense level would be

section 924(c) for 'carrying' a firearm 'the defendant must have transported the firearm on or about his or her person.' " (quoting *United States v. Hernandez*, 80 F.3d 1253, 1258 (9th Cir.1996))).

As for the second component, the district court erred in failing to state an element of the crime. As noted, the court asked Seesing, "[D]id you carry or use a firearm during drug trafficking?" The court left out the requirement that the use or carrying must be during "and in relation to" the drug trafficking. *See United States v. Mendoza*, 11 F.3d 126, 128–29 (9th Cir.1993) (holding that "in relation to" is an element of 18 U.S.C. § 924(c)). Accordingly, the requirements of Rule 11(c)(1) were not met. *See United States v. Bruce*, 976 F.2d 552, 560 (9th Cir.1992) ("[T]he nature and elements of the crime to which [the defendant] was pleading guilty were not explained to him. In the absence of such an explanation, the district court did not meet its obligation under Rule 11(c)(1) ...."); *see also Henderson v. Morgan*, 426 U.S. 637, 644–45, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976).

 The question remains whether this error was harmless under Rule 11(h), which states: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." There are only two ways in which the district court's error could be held harmless under Rule 11(h).

First, the error was harmless if Seesing's responses in his colloquy "clearly indicate" his awareness of the "in relation to" element of 18 U.S.C. § 924(c). *See* Fed.R.Crim.P. 11(h), Notes of Advisory Committee to the 1983 Amendment (listing, as one of the errors which should be held harmless, "when an essential element of the crime was not mentioned, but the defendant's responses clearly indicate his awareness of that element"); *see also*

*United States v. Jaramillo–Suarez*, 857 F.2d 1368, 1372 (9th Cir.1988) (citing Advisory Committee notes). The plea colloquy does not "clearly indicate" that Seesing understood that the carrying of the handgun must have been "in relation to" the methamphetamine trafficking. His statement, "It was not meant to threaten," could suggest such an understanding, but it is by no means clear.

Second, the error could be harmless if, as a matter of law, the carrying of a weapon in a drug trafficking crime satisfies the "in relation to" element. This is not the case. *See Mendoza*, 11 F.3d at 128–29 (district court's failure to instruct jury on "in relation to" element reversible, nonharmless error); *United States v. Stewart*, 779 F.2d 538, 540–41 (9th Cir.1985) (reversing conviction for failure to instruct on "in relation to" element) *overruled on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Thus, the Rule 11(c)(1) violation was not harmless and Seesing's plea must be withdrawn as deficient. Seesing should receive a full and complete plea colloquy before the district court.

**B. Federal Rule of Criminal Procedure 11(f)**

Rule 11(f) states: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Because we hold that the district court violated Rule 11(c)(1), we need not analyze the colloquy under Rule 11(f).

**IV. Recharacterization of Letter as 28 U.S.C. § 2255 Motion**

 Pro se complaints and motions from prisoners are to be liberally construed.[3] *See, e.g., Resnick v. Hayes*, 213

---

34, not 32 as used by the district court. Sentencing Guideline § 2D1.1(c)(3).

**3.** Though Seesing was technically represented by counsel when his letter was filed, we proceed as though he was pro se. On May 23,

1998, Seesing wrote his lawyer, stating: "You are fired, terminated, no longer needed by myself." Seesing also refused contact with his attorney and returned his attorney's correspondence unopened. The government con-

F.3d 443, 447 (9th Cir.2000) ("[C]ourts must construe pro se pleadings liberally"); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir.1999). In this regard, we have occasionally characterized pro se prisoner motions as motions under 28 U.S.C. § 2255. *See United States v. Johnson*, 988 F.2d 941, 943 (9th Cir.1993) (construing motion brought under Fed.R.Crim.P. 35(a) as one under 28 U.S.C. § 2255); *United States v. Young*, 936 F.2d 1050, 1052 (9th Cir.1991) (same).

■ The rule of liberal construction and its application to 28 U.S.C. § 2255 motions is for the benefit of the pro se prisoner; its rationale loses validity where it is invoked to the prisoner's disadvantage. In this case, characterizing Seesing's letter as a 28 U.S.C. § 2255 motion (and denying it) was to Seesing's great disadvantage as it seriously diminished the possibility of successfully filing a future, properly drafted and documented, motion. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the opportunity to file successive motions under 28 U.S.C. § 2255 is strictly limited. *See generally* 28 U.S.C. § 2255 (second or successive motions may be certified only if based on "newly discovered evidence" or "a new rule of constitutional law ... that was previously unavailable").

In *Adams v. United States*, 155 F.3d 582 (2d Cir.1998), the Second Circuit aptly explained the pitfalls of converting a prisoner's pro se motion into a motion under 28 U.S.C. § 2255 in light of AEDPA:

> The enactment of AEDPA, however, brings into play new considerations.... If a district court receiving a motion under some other provision of law elects to treat it as a motion under § 2255 and then denies it, that may cause the movant's subsequent filing of a motion under § 2255 to be barred as a "second" § 2255.... The court's act of conversion which we approved under pre-AED-

PA law because it was useful and harmless might, under AEDPA's new law, become extraordinarily harmful to a prisoner's rights. A prisoner convicted pursuant to unconstitutional proceedings might lose the right to have a single petition for habeas corpus adjudicated, solely by reason of a district court's having incorrectly recharacterized some prior motion as one brought under § 2255.

*Id.* at 583–84 (footnote omitted).

The court then established a procedure to prevent a pro se prisoner from being unduly barred from filing a successive 28 U.S.C. § 2255 motion when one filing has been construed as such:

> At least until it is decided whether such a conversion or recharacterization can affect the movant's right to bring a future habeas petition, district courts should not recharacterize a motion purportedly made under some other rule as a motion under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such a recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it recharacterized.

*Id.* at 584.

*United States v. Miller*, 197 F.3d 644, 646 (3d Cir.1999), cites *Adams* and holds that before recharacterization a district court must advise the pro se petitioner of three options: (1) have the motion ruled upon as filed; (2) if the motion is not styled as a 28 U.S.C. § 2255 motion, have the motion recharacterized as such and heard, but lose the ability to file second or successive motions absent certification from the court of appeals; or (3) withdraw

---

ceded that as of May 23, 1998, Seesing's attorney ceased to act as counsel for the de-

fendant.

the motion and file one all-inclusive 28 U.S.C. § 2255 motion within the one-year statutory period.

The procedures established by the Second and Third Circuits are similar in character to procedures this court has adopted for other types of motions filed by pro se prisoners when a district court's recharacterization could have a detrimental impact on the prisoner. For example, in *Anderson v. Angelone,* 86 F.3d 932, 934–35 (9th Cir.1996), this court held: "When the district court transforms a dismissal into a summary judgment proceeding" it is "obligated to advise pro se litigants of Rule 56 requirements" and to "afford [them] a reasonable opportunity to present all pertinent material." (internal quotations and citations omitted).

 It is in keeping with this court's precedent to extend the protections recognized in *Anderson* to the recharacterization of pro se prisoner motions as 28 U.S.C. § 2255 motions. Accordingly, we adopt the procedures propounded by the Second Circuit in *Adams* and restated by the Third Circuit in *Miller.* When presented with a pro se motion that could be recharacterized as a 28 U.S.C. § 2255 motion, a district court should not so recharacterize the motion unless: (a) the pro se prisoner, with knowledge of the potential adverse consequences of such a recharacterization, consents or (b) the district court finds that because of the relief sought that the motion should be recharacterized as a 28 U.S.C. § 2255 motion and offers the pro se prisoner the opportunity, after informing the prisoner of the consequences of recharacterization, to withdraw the motion. Under either scenario, the pro se prisoner has the option to withdraw the motion and file one all-inclusive 28 U.S.C. § 2255 motion within the one-year statutory period.[4]

The sentence is VACATED and the matter REMANDED to the district court for a new plea colloquy as to Count 2 and

resentencing as to all other counts. The decision of the district court construing Seesing's June 15, 1998 letter as a 28 U.S.C. § 2255 motion is REVERSED and the matter is REMANDED to the district court for proceedings consistent with this opinion.

---

4. If Seesing chooses on remand to withdraw his motion, his time to file shall run from entry of judgment in the district court, all time since the entry of judgment having been tolled.