[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 07, 2002
THOMAS K. KAHN
CLERK

————————————

No. 01-12181

————————————

D. C. Docket No. 97-00097-CV-4

HERNAN O'RYAN CASTRO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Georgia

————————————

**(May 7, 2002)**

Before WILSON, RONEY and FAY, Circuit Judges.

WILSON, Circuit Judge:

We vacate our prior opinion, which was reported at 277 F.3d 1300, and

substitute this opinion in its place.

Hernan O'Ryan Castro appeals the district court's dismissal of his habeas corpus petition, which was filed pursuant to 28 U.S.C § 2255. The district court concluded that the petition was successive under § 2255, as amended by the 1996 Antiterrorism and Effective Death Penalty Act (AEDPA), and thus not entitled to consideration.

The dismissal of O'Ryan Castro's petition raises an issue of first impression in this Circuit: when a district court recharacterizes a federal prisoner's postconviction motion as a petition under § 2255, does that render the prisoner's subsequent attempt to file a § 2255 petition a "second or successive" petition within the purview of the AEDPA amendments? We hold that under the AEDPA, O'Ryan Castro's subsequent § 2255 petition was properly deemed successive. However, due to the strict limitations the AEDPA imposes on petitioners who wish to file successive § 2255 petitions, we suggest that in the future, when a district court unilaterally recharacterizes a prisoner's pleading as a § 2255 petition, the judge should also warn the petitioner of the consequences of this recharacterization – that this recharacterized petition may be his first and only chance to seek relief under § 2255.

BACKGROUND

In 1992, O'Ryan Castro was convicted and sentenced to twenty years of imprisonment for conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846, possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), and conspiracy to import cocaine in violation of 21 U.S.C. § 963. We affirmed the convictions and sentence on March 24, 1994. On July 11, 1994, O'Ryan Castro filed a pro se Motion For New Trial pursuant to Federal Rule of Criminal Procedure 33 based upon newly discovered evidence. The evidence consisted of proof that a witness, who testified against him at trial, had entered into an immunity agreement with the government. The government submitted a response in which it stated that it did not object to the motion as demanding relief under both Rule 33 and § 2255. O'Ryan Castro then filed a pro se reply in which he explained that he had filed his motion properly under Rule 33. The district court treated O'Ryan Castro's motion as requesting relief pursuant to both Rule 33 and § 2255 and denied it on October 28, 1994. We affirmed the district court's ruling.

On April 22, 1997, O'Ryan Castro filed his first self-styled § 2255 habeas petition, alleging, among other things, that he failed to receive effective assistance of counsel in violation of the Sixth Amendment. The district court denied this petition and O'Ryan Castro appealed. After granting a certificate of appealability

3

on the ineffective assistance claim, we vacated the order denying his petition and remanded the matter for further evidentiary determinations. We also instructed the district court to examine the record to determine whether O'Ryan Castro's petition was successive. The district court concluded that the petition was successive and dismissed it due to its failure to meet the particular requirements imposed by the amendments to § 2255 regarding successive petitions.

## STANDARD OF REVIEW

"We review de novo a district court's denial of habeas corpus relief." *Dorsey v. Chapman*, 262 F.3d 1181, 1185 (11th Cir. 2001), *cert. denied*, __ U.S. __ (2002). "A district court's factual findings in a habeas corpus proceeding are reviewed for clear error." *Id*.

## DISCUSSION

When O'Ryan Castro filed his motion for new trial pursuant to Rule 33 based upon newly discovered evidence, the district court recharacterized his Rule 33 motion as both a motion for a new trial and a § 2255 motion. As the district court explained, O'Ryan Castro's claims were based upon his constitutional right to due process and were more properly raised in a § 2255 petition.

District courts have always had the power to recharacterize pro se petitioners' motions. In fact, due to the frequency in which pro se litigants draft

4

incognizable motions, "[f]ederal courts have long recognized that they have an obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." *United States v. Jordan*, 915 F.2d 622, 624–25 (11th Cir. 1990). This accommodation was the result of the time-honored practice of construing pro se plaintiffs' pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). In accordance with this practice, "district courts routinely convert post-conviction motions of prisoners who unsuccessfully [seek] relief under some other provision of law into motions made under . . . § 2255 and proceed to determine whether the prisoner was entitled to relief under that statute." *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998) (per curiam).

In this particular case, the district court recharacterized O'Ryan Castro's motion as both a Rule 33 motion and § 2255 petition in 1994. The AEDPA took effect approximately two years later, on April 24, 1996. The AEDPA, which amended § 2255, bars federal prisoners from attacking their convictions through successive habeas corpus petitions except in very limited circumstances. 28 U.S.C. § 2255. Specifically, successive applications may be heard only after an appellate court certifies the petition, because it contains:

> (1) newly discovered evidence that, if proven and viewed in light of
> the evidence as a whole, would be sufficient to establish by clear and

convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

In 1997, a year after the AEDPA was enacted, O'Ryan Castro filed a § 2255 petition, arguing ineffective assistance of counsel. Despite the fact that O'Ryan Castro filed his first recharacterized Rule 33 and § 2255 petition before the AEDPA's effective date, we must apply the restrictions set forth under the AEDPA. Congress made no exceptions for those who had filed their § 2255 petitions before the AEDPA was enacted and were now filing their second petitions after the effective date of the AEDPA. Therefore, a second petition has the capacity to trigger the procedural strictures that the AEDPA attaches to successive habeas petitions. *See Raineri v. United States*, 233 F.3d 96, 99 (1st Cir. 2000). "If a district court receiving a motion under some other provision of law elects to treat it as a motion under § 2255 and then denies it, that may cause the movant's subsequent filing of a motion under § 2255 to be barred as" successive under the AEDPA. *Adams*, 155 F.3d at 583.

In this case, the ineffective assistance of counsel claim was available to O'Ryan Castro at the time he filed his initial motion for new trial, and he had an

opportunity to raise this claim during the adjudication of his recharacterized § 2255 petition. Therefore, this subsequent § 2255 petition, filed three years later, is successive because it does not meet either of the two requirements found under the AEDPA – O'Ryan Castro's second petition does not contain newly discovered evidence,[1] nor does the second petition address a new rule of constitutional law.

While we must follow the restrictions on successive petitions as laid out by the AEDPA and find O'Ryan Castro's petition successive under the AEDPA, we can suggest that in the future, district courts should warn petitioners of the consequences of recharacterizing their motions as § 2255 petitions. We have substantial fairness concerns with the result in this case. These same fairness concerns have been articulated by the First Circuit in *Raineri.* 233 F.3d at 99.

The petitioner in *Raineri*, like O'Ryan Castro, brought a Motion for Correction of Sentence and/or New Trial pursuant to Federal Rule of Criminal Procedure 35 and/or Rule 33 prior to the AEDPA's effective date. *Id*. at 98. The district court, acting sua sponte, found Rules 33 and 35 inapplicable and recharacterized the motion as an application for relief under § 2255. *Id*. The petitioner submitted a subsequent motion styled as a § 2255 petition, which the

_____

[1] According to the magistrate judge, O'Ryan Castro was "well aware of the circumstances surrounding his post-arrest statements prior to his trial and the filing of his motion."

7

district court deemed successive and thus dismissed for failure to obtain the requisite authorization to proceed with a successive petition. *Id*. at 99. In reversing this dismissal, the First Circuit concluded that "because the court acted sua sponte and without any advance notice to the petitioner, [it could not] treat the earlier pleading as a 'first' habeas petition for AEDPA purposes." *Id*. at 100–01. The court held "that when a district court, acting sua sponte, converts a post-conviction motion filed under some other statute or rule into a section 2255 petition without notice and an opportunity to be heard (or in the alternative, the pleader's informed consent), the recharacterized motion ordinarily will not count as a 'first' habeas petition sufficient to trigger AEDPA's gatekeeping requirements." *Id.* at 100.

We are constrained, in this Circuit, to disagree with the holding in *Raineri* because of our view that Congress, in enacting the AEDPA, imposed further restrictions on a prisoner's ability to file a second § 2255 petition. *Felker v. Turpin*, 518 U.S. 651, 664 (1996) ("The [AEDPA] also codifies some of the pre-existing limits on successive petitions, and further restricts the availability of relief to habeas petitioners."). Thus, if we were to relieve an entire class of petitioners from any restriction at all on the filing of a second motion simply because their first motions had been recharacterized, we might undermine the congressional

purpose behind the AEDPA, which is to limit successive § 2255 petitions. Without being given any additional instruction by Congress on this particular matter, we must apply the AEDPA restrictions to successive § 2255 petitions and find O'Ryan Castro's petition successive.[2]

However, we agree with the First Circuit's remarks that a district court should not "extinguish the petitioner's one clear chance at habeas relief under the AEDPA" without the petitioner's informed consent. *Raineri*, 233 F.3d at 100. Therefore, we feel we must note that in *future* cases where the petitioner is *not* filing a second petition, but rather is asking to *withdraw* his motion or to *include additional claims* after a district court has decided to recharacterize the initial motion as a § 2255 petition, we would agree with a clear majority of the circuits that district courts should warn prisoners of the consequences of recharacterization and provide them with the opportunity to amend or dismiss their filings. *United States v. Miller*, 197 F.3d 644, 652 (3d Cir. 1999) (stating that "upon receipt of pro

---

[2]  Incidentally, Congress could have made an exception to the AEDPA rules involving second motions and petitions for this set of circumstances, but it did not do so. The rule as written by Congress applies across the board to all second filings, except in the two carefully limited, narrow circumstances that are specified in the statute. *See* 28 U.S.C. § 2255. Therefore, we cannot substitute our judgment regarding this matter for that expressed by Congress and must apply the AEDPA to all petitioners whether or not their initial recharacterized § 2255 petitions were filed before or after the AEDPA was enacted.

se pleadings challenging an inmate's conviction or incarceration – whether styled as a § 2255 motion or not – a district court should issue a notice to the petitioner regarding the effect of his pleadings. This notice should advise the petitioner that he can (1) have his motion ruled upon as filed; (2) if his motion is not styled as a § 2255 motion have his motion recharacterized as a § 2255 motion and heard as such, but lose his ability to file successive petitions absent certification by the court of appeals; or (3) withdraw the motion, and file one all-inclusive § 2255 petition within the one-year statutory period."); *Adams*, 152 F.3d at 584 (holding that "[a]t least until it is decided whether such a conversion or recharacterization can affect the movant's right to bring a future habeas petition, district courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized"); *see also Henderson v. United States*, 264 F.3d 709, 711 (7th Cir. 2001) (holding that a court should not deem a Rule 33 or other mislabeled motion a § 2255 motion "unless the movant has been warned about the

10

consequences of his mistake"); *United States v. Kelly*, 235 F.3d 1238, 1242 (10th Cir. 2000) ("[W]e hold that district courts should use the procedure adopted in *Adams* for dealing with pro se post-conviction motions not expressly made under § 2255 . . . ."); *United States v. Seesing*, 234 F.3d 456, 464 (9th Cir. 2000) (adopting the procedure set forth in *Adams* to address circumstances where a court is presented with a pro se motion that could be recharacterized as a § 2255 motion).

Therefore, we conclude that under the AEDPA's strict limitations, O'Ryan Castro's petition is successive. However, in the future, we urge district courts to be aware of these substantial fairness concerns and warn petitioners of the consequences of the recharacterization of their filings as § 2255 petitions.

## CONCLUSION

The district court's dismissal of O'Ryan Castro's § 2255 petition is hereby affirmed. We find that O'Ryan Castro's § 2255 petition is successive.

AFFIRMED.

RONEY, Circuit Judge, dissenting:

I respectfully dissent. I would reverse the dismissal of Castro's section 2255 motion as successive and remand for consideration on the merits following the reasoning of the First Circuit's opinion in *Raineri v. United States*, 233 F. 3d 96 (1st Cir. 2000).

The decision here is in direct conflict with *Raineri,* the only case cited directly addressing a pre-AEDPA motion that was "converted" to a section 2255 motion, followed by a post-AEDPA section 2255 motion. On facts very similar to these, the *Raineri* court held that a *sua sponte* recharacterization ordinarily will not count as a first petition and remanded the case back to the district court for consideration of Raineri's section 2255 motion on the merits. *See also* cases involving post-AEDPA converted motions: *Adams v. United States*, 155 F.3d 582 (2d Cir. 1998) (movant must know of potential adverse consequences of recharacterization and be given the opportunity to withdraw motion); *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999) (court must issue notice of the effect of recharacterization and offer the opportunity to withdraw motion); *United States v. Seesing*, 234 F.3d 456 (9th Cir. 2000) (movant must know consequences of recharacterization, or the purpose of aiding *pro se* petitioner is frustrated); *United States v. Kelly*, 235 F.3d 1238 (10th Cir. 2000) (following *Adams*); *Henderson v.*

12

*United States*, 264 F.3d 709, 711 (7th Cir. 2001) (even though the district court converted and denied a Rule 33 motion, "we won't deem a Rule 33 (or other mislabeled motion) a section 2255 motion unless the movant has been warned about the consequences of his mistake.")

The Fifth Circuit case of *In Re Tolliver*, 97 F.3d 89 (5th Cir. 1996), involved a post-AEDPA, not a pre-AEDPA "converted" motion, in which the petitioner had received full relief on his prior motion, relief which could have been granted only upon a "conversion" to a § 2255 motion, and relief which the petitioner readily accepted.

We have found no case in which a pre-AEDPA motion that was "converted" by the court and then denied barred a second post-AEDPA § 2255 motion.