296 F.3d 1135
 UNITED STATES of America, Appellee,
v.
Michael PALMER, a/k/a James, a/k/a Knot, a/k/a Tony, Appellant.
 No. 00-3020.
 United States Court of Appeals, District of Columbia Circuit.
 Argued February 20, 2002.
 Decided July 19, 2002.
 As Amended September 17, 2002.
 
 Appeal from the United States District Court for the District of Columbia (No. 89cr00036-01).
 Sandra G. Roland, Assistant Federal Public Defender, argued the cause for the appellant. A. J. Kramer, Federal Public Defender, was on brief.
 David B. Goodhand, Assistant United States Attorney, argued the cause for the appellee. Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher and Thomas J. Tourish Jr., Assistant United States Attorneys, were on brief. Mary-Patrice Brown, Assistant United States Attorney, entered an appearance.
 Before: HENDERSON, RANDOLPH and ROGERS, Circuit Judges.
 Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.
 KAREN LeCRAFT HENDERSON, Circuit Judge:
 
 
 1
 Michael Palmer (Palmer) appeals the dismissal of his petition to vacate his criminal conviction. In particular, he challenges the district court's holding that the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996) (codified in various sections of Title 28 of the United States Code), applies to his petition notwithstanding, he argues, that it merely amends a pre-AEDPA section 2255 petition filed on his behalf by the Office of the Federal Public Defender (FPD). Palmer also contends that his motion for a new trial, made under Federal Rule of Criminal Procedure 33 and recharacterized by this court sua sponte as a section 2255 petition, does not constitute a "first" section 2255 petition and thus the district court wrongly concluded that his current section 2255 petition is "successive" within the meaning of the AEDPA. This case raises an issue of first impression in our circuit: whether this court's (or a district court's) treatment of a federal prisoner's motion for any post-conviction relief (including a new trial) as a section 2255 petition renders a subsequent section 2255 petition "second or successive" and thus governed by the AEDPA's procedural limitations. While we agree that the AEDPA applies to Palmer's section 2255 motion, we nonetheless conclude that his motion is not successive and therefore reverse the dismissal of Palmer's motion, remanding for further proceedings.
 
 I.
 
 2
 In a 23-count indictment filed in 1989, the United States charged Palmer and seven co-defendants with multiple narcotics and firearm offenses. Following a jury trial, Palmer was convicted on 12 counts, including conspiracy to distribute, and to possess with intent to distribute, cocaine base and cocaine powder in violation of 21 U.S.C. § 846; operating a continuing criminal enterprise which involved the distribution of at least 1500 grams of cocaine base in violation of 21 U.S.C. § 846(b); conspiracy to use and carry firearms during and in relation to drug trafficking offenses in violation of 18 U.S.C. § 924(c); and use of juveniles in drug trafficking in violation of 21 U.S.C. § 861. On October 18, 1989 he was sentenced to life without parole plus twenty years, and ten years' supervised release. He was also ordered to pay a special assessment fee of $1,050. Palmer subsequently appealed his conviction, which this court affirmed in United States v. Harris, 959 F.2d 246 (D.C.Cir.), cert. denied, 506 U.S. 933, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992).
 
 
 3
 On September 15, 1995 Palmer filed pro se his first post-conviction motion. It was entitled "Motion for New Trial Newly Discovered Evidence" and sought a new trial "pursuant to Federal Rules of Criminal Procedure, Rule 33, and USCA title 18." (Rule 33 Motion). Palmer alleged that he was "critically prejudiced" by the introduction into evidence of photographs of himself and Raymond Morant brandishing firearms, which photographs led the jury, wrongly according to Palmer, to believe that the firearms belonged to him. See Rule 33 Motion at 1. Attached to the Rule 33 Motion was an affidavit signed by Raymond Morant asserting that, while Palmer was present when Morant purchased four guns in Pennsylvania, it was Morant, not Palmer, who made the purchase and owned the guns. Id., Exh. A. Acknowledging that the Rule 33 Motion was untimely, Palmer asserted the delay resulted from "[e]xcusable [n]eglect." Id. at 1. On December 5, 1995 the district court summarily denied the Rule 33 Motion. See December 5, 1996 Order.[1] Palmer appealed and the government, in opposition, argued that the district court had properly denied the motion as "untimely." Gov't Br. in United States v. Palmer, No. 95-3204 (1995) at 8-9. The government further asserted that even if the district court had considered the motion on the merits, it would have rejected the motion. Id. at 10. In an unpublished opinion, we affirmed the district court. See United States v. Palmer, 97 F.3d 593, 1996 WL 525586 (D.C.Cir. 1996). We initially noted that, "[a]lthough Palmer's motion for a new trial based on newly discovered evidence is untimely under Federal Rule of Criminal Procedure 33, his request for a new trial can be treated as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255." Id. Assessing the merits, we stated that "[t]he evidence Palmer relies on for his claim that he had no connection to the guns bought by Raymond Morant is not newly discovered" because the information included in the Morant affidavit "was made available to the defense prior to trial and ... Morant, in fact, did discuss his possible testimony with Palmer's trial counsel." Id. We further opined that the "prosecutorial overreaching" and "ineffective assistance of trial counsel" claims were "insufficient to entitle him to relief under 28 U.S.C. § 2255." Id.
 
 
 4
 On April 22, 1996, two days before the AEDPA became effective, a lawyer in the FPD's Office filed a petition entitled "Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255" (FPD 2255 Motion), purportedly on Palmer's behalf. It raised a single claim under Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995),[2] seeking to vacate his conviction on the section 924(c) count (using/carrying a firearm "during and in relation" to a "drug trafficking crime").[3] The FPD did not, however, contact Palmer before, or even after, filing the motion. Palmer learned of the FPD 2255 Motion only when he received a copy of the docket sheet from the district court clerk of court in July 1996. See July 5, 1996 Palmer Motion to Dismiss at 1 ¶ 2-4. At that point, Palmer, again proceeding pro se, moved to dismiss the FPD 2255 Motion declaring that "the federal defender's office filed a [section 2255] motion regarding a single issue of violation under 18 U.S.C. 924(c), without consultation with defendant concerning other issues" and thus "has placed defendant with the possibilities of any further petition being denied as successive." Id. at 2 ¶ 5-6.
 
 
 5
 While his motion to dismiss was pending, Palmer filed another motion pro se, this one entitled "Motion to Amend." He explained that he now wanted to "adopt[]" the FPD 2255 Motion. See April 8, 1997 Motion to Amend at 2. He further requested permission to "[a]mend this action in the bounds of justice and equal protection." Id. Along with the motion to amend, Palmer filed pro se a sixty-seven page motion entitled "Motion to Vacate Conviction" pursuant to 28 U.S.C. § 2255. He raised ten additional claims involving numerous evidentiary, sentencing and constitutional issues but making no specific reference to the Bailey claim raised in the FPD 2255 Motion. See April 8, 1997 Motion to Vacate Conviction (Palmer 2255 Motion). On June 2, 1997 the district court issued an order granting Palmer's motion to dismiss the FPD 2255 Motion without referring to his subsequent motion to amend (Dismissal Order). The Dismissal Order denied two of the claims raised in the Palmer 2255 Motion as "previously rejected on direct appeal" and required the government to respond to Palmer's remaining claims within twenty days from the date of the order. See June 2, 1997 Dismissal Order at 1-2. Palmer did not seek reconsideration of the Dismissal Order nor did he file a notice of appeal.
 
 
 6
 As required by the Dismissal Order, the government responded to Palmer's 2255 Motion on June 12, 1997. Relying on this court's decision in United States v. Palmer, supra, the government argued that this court had "deemed defendant's [Rule 33] motion simultaneously as a motion for new trial and as a motion to vacate sentence under 28 U.S.C. section 2255." Government's Opposition to Defendant's Motion to Vacate, Set Aside or Correct Sentence at 3. The government further argued that "[s]ince this is the defendant's second section 2255 motion[,] it is subject to" the procedural limitations of the newly-enacted AEDPA. Id. at 3-4. Even if the AEDPA was not applicable, the government contended that the Palmer 2255 Motion violated the "abuse of the writ doctrine"[4] and thus was not cognizable in district court. See id. at 4 (citing McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991)).
 
 
 7
 On June 23, 1997 Palmer filed pro se a reply entitled "Response to Government's Opposition to Petitioner's 28 U.S.C. § 2255," asserting that the Rule 33 Motion was dismissed as untimely only and further that his 2255 motion was not "successive" because it "supplement[ed]" the FPD 2255 Motion. The FPD separately filed a supplement to Palmer's pro se reply, adopting Palmer's position that his 2255 motion was not a "new submission, but merely an amendment" and adding that "Palmer's Motion[] to Amend relate[s] back to the April 22, 1996 [FPD 2255] Motion filed on his behalf." July 22, 1997 Supplemental Reply to Government's Opposition to Motion to Vacate at 1 ¶ 1. In a second supplemental reply to the government's opposition, the FPD further argued that abuse of the writ was inapplicable to Palmer's circumstances, noting that the doctrine was designed to address cases of "deliberate abandonment of claims or inexcusable neglect," neither of which applied to Palmer. See August 8, 1997 Second Supplemental Reply to Government's Opposition to Motion to Vacate at 1-2.
 
 
 8
 Eventually, on October 29, 1998 Palmer, this time through the FPD, filed "Defendant's Supplement to and Amendment to Motion to Vacate, Set Aside or Correct Sentence," expanding the arguments he raised in the Palmer 2255 Motion as well as reasserting the Bailey claim raised in the FPD 2255 Motion. Palmer attached an affidavit in which he declared that his only intent in filing the Rule 33 Motion was to "file under Rule 33 for a New Trial." See August 7, 1997 Affidavit of Michael Palmer at 1 ¶ 3. The government's opposition repeated its argument that the Palmer 2255 Motion was a second or successive one under the AEDPA. It asked the district court to transfer the Palmer 2255 Motion to this court to consider whether to certify it for review under section 2244.[5] See Government's Motion to Transfer Defendant's Motion Pursuant to 28 U.S.C. § 2255 Or, In The Alternative, Government's Opposition to Defendant's Motion Pursuant to 28 U.S.C. § 2255 at 1. Alternatively, the government argued that the Palmer 2255 Motion should be denied on the merits. Significantly, the government conceded that in light of United States v. Anderson, 59 F.3d 1323 (D.C.Cir.1995) (en banc) (one underlying drug-trafficking crime cannot be predicate for more than one section 924(c) conviction), four of Palmer's five section 924(c) convictions should be vacated. Moreover, the government also acknowledged that Palmer's section 846 conspiracy conviction should be vacated because it was a lesser included offense of the continuing criminal enterprise conspiracy count. Id. On August 20, 1999 Palmer filed pro se his reply to the government's opposition. See Palmer's Reply to Government's Response to 2255 Motion. In addition to addressing the merits, Palmer again responded to the government's successive motion argument by pointing out that this court had "[w]ithout implication or notice, ... altered [his] Rule 33 Appeal after all briefing schedules had been met, by noting in its opinion the change to an appeal of a 28 U.S.C. § 2255 motion." He continued that "[t]his misuse of discretion created an impasse now creating a possible successive motion." Id. at 2. Palmer further stated that he had filed the Rule 33 Motion "without knowledge of the law" and that, at the time, he was also preparing a section 2255 motion covering all of his claims. Id.
 
 
 9
 In a one-page order issued on December 30, 1999 the district court dismissed the Palmer 2255 Motion, concluding that under the AEDPA the motion constituted a "successive application for review of his sentence" which "must initially be addressed by the United States Court of Appeals for the District of Columbia Circuit rather than by this court." December 30, 1999 Order at 1. On March 3, 2000 Palmer filed a timely notice of appeal.[6] Subsequently, he moved to hold the appeal in abeyance pending the issuance of a certificate of appealability (COA) by the district court. After we sua sponte remanded the case for consideration of the COA question, the district court issued an order on April 9, 2001 granting the application for a certificate because "a reasonable jurist could disagree with this court's holding that the AEDPA applied to Mr. Palmer's § 2255 motion and that the motion was a `successive application for review of his sentence brought pursuant to 28 U.S.C. § 2255.'" April 9, 2001 Order Granting Defendant Palmer's Motion for a Certificate of Appealability at 2. In addition, the court concluded that the "defendant has stated at least one claim that a reasonable jurist could construe as a valid claim of the denial of a constitutional right." Id.
 
 II.
 
 10
 Our review of the district court's dismissal of Palmer's section 2255 motion is de novo. See Lanier v. United States, 220 F.3d 833, 837 (7th Cir.), cert. denied, 531 U.S. 930, 121 S.Ct. 312, 148 L.Ed.2d 250 (2000); Moore v. United States, 173 F.3d 1131, 1133 (8th Cir.1999).
 
 
 11
 Palmer's challenge to the district court's dismissal of the Palmer 2255 Motion rests on two grounds: first, he contends that his section 2255 motion, filed pro se on April 8, 1997, simply amended the FPD 2255 Motion, which was filed before the enactment of the AEDPA and therefore is not a successive motion under the AEDPA. Second, Palmer argues that even if the AEDPA does apply, the Palmer 2255 Motion is not a second or successive motion because this court sua sponte recharacterized his untimely Rule 33 Motion as a section 2255 motion without notice to him.
 
 
 A. Applicability of AEDPA
 
 
 12
 Palmer asserts that the FPD filed the FPD 2255 Motion on his behalf on April 22, 1996, before the AEDPA's effective date, and therefore it is not subject to the AEDPA's "successive" motion restriction. In Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the United States Supreme Court determined that the AEDPA amendments to section 2255 apply only to cases filed after the statute's April 24, 1996 enactment date. Id. at 326-27, 117 S.Ct. at 2063.[7] In Lindh, however, the Court did not address whether the AEDPA applies to a section 2255 motion filed prior to, but amended after, the effective date of the AEDPA. Rule 12 of the Rules Governing Section 2255 Proceedings For the United States District Courts provides that "[i]f no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules, or any statute, and may apply the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to petitions filed under these rules." Rules Governing Section 2255 Proceedings For the United States District Courts, Rule 12. Because the Section 2255 Rules do not address whether an amended petition relates back to the original filing date, courts have applied Rule 15 of the Federal Rules of Civil Procedure, which governs amended and supplemental pleadings, to amended section 2255 motions. See, e.g., United States v. Pittman, 209 F.3d 314, 316-17 (4th Cir.2000) (applying Rule 15 to decide whether post-AEDPA amendments "relate back" to timely section 2255 motion). We need not reach, however, the question whether Palmer's amended section 2255 motion relates back to the pre-AEDPA FPD 2255 Motion under Rule 15.[8] The question we do consider is whether the FPD 2255 Motion was included in the Dismissal Order, leaving the Palmer 2255 Motion, as amended by the FPD's October 29, 1998 submission, as the sole motion before us.
 
 
 13
 The government argues that the Dismissal Order dismissed the FPD 2255 Motion, just as Palmer's motion to dismiss sought. Palmer nonetheless contends that his April 8, 1997 motion to amend manifested his intent to abandon his then-pending motion to dismiss and therefore the dismissal of the FPD 2255 Motion was a "ministerial mistake." Palmer Br. at 9. To be sure, his motion to amend, filed simultaneously with his 2255 motion, noted that "[a]s of the date of this motion, no decision has been made either on the [FPD's] 2255 action nor petitioner motion to withdraw[,] [t]herefore, petitioner now (adopts) the Federal Public Defender motion and requests permission of this Court to Amend this action in the bounds of justice and equal protection." Motion to Amend 1-2. Palmer's apparent desire to withdraw his motion to dismiss the FPD 2255 Motion and instead to "adopt" and amend it was thwarted. Irrespective of his motion to amend, the Dismissal Order unmistakably directed that Palmer's "motion to dismiss the April 22, 1996 motion to vacate conviction filed by the Federal Public Defender be and it is hereby GRANTED." Dismissal Order at 2. There is no other way to read the Dismissal Order.
 
 
 14
 To the extent that Palmer now contends that the district court's decision to dismiss rather than amend the pre-AEDPA motion was "mistaken," the time to challenge that aspect of the Dismissal Order is long past. A motion to alter or amend a judgment must be filed no later than 10 days after entry of the judgment. See Fed. R. Civ. Pro. 59(e). In addition, a federal prisoner appealing the dismissal of a section 2255 petition must file the notice of appeal within 60 days of final judgment although the district court may, upon a showing of good cause, extend the period an additional 30 days. See Rules Governing Section 2255 Proceedings For the United States District Courts, Rule 11 ("time for appeal from an order entered on a motion for [section 2255] relief ... is as provided in Rule 4(a) of the Federal Rules of Appellate Procedure"); Fed.R.App.P. 4(a)(1) (in civil case where United States is party, notice of appeal must be filed within sixty days after date of entry of final judgment). The specified period is "mandatory and jurisdictional." Browder v. Director, Dep't of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978) (quoting United States v. Robinson, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960)). It applies to a pro se section 2255 motion as well. See Kapsalis v. Wilson, 380 F.2d 365, 366 (9th Cir.) (rejecting pro se petitioner's appeal as untimely), cert. denied, 389 U.S. 878, 88 S.Ct. 180, 19 L.Ed.2d 168 (1967). Were we to conclude that Palmer by his motion to amend intended to withdraw his previously filed motion to dismiss and instead to adopt the FPD 2255 Motion, that motion was dismissed.[9] Palmer failed to move the court to reconsider the ruling, to appeal the dismissal or to challenge the district court's failure to rule on his outstanding motion to amend. By failing to file a notice of appeal, Palmer has waived his right to now argue that the dismissal was "mistaken." Because the FPD 2255 Motion filed before the AEDPA's effective date was unquestionably dismissed and that dismissal was not challenged, the remaining Palmer 2255 Motion was filed post-AEDPA enactment and the AEDPA's "successive" motion bar applies.
 
 
 B. Successive Motion Procedural Bar
 
 
 15
 In 1995 Palmer filed a Rule 33 motion for new trial based on what he claimed was newly discovered evidence. Because the motion was filed nearly six years after the jury found him guilty, the motion was untimely. See Fed.R.Crim.P. 33 ("A motion for a new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty."). Finding no "good cause," the district court denied the Rule 33 Motion. Palmer appealed. In an unpublished opinion we affirmed the district court. See United States v. Palmer, supra. Notwithstanding its tardiness, we found "[Palmer's] request for a new trial can be treated as a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255." Id. (emphasis added). Treating it thus, we concluded that Palmer's claims of ineffective assistance and prosecutorial misconduct were "insufficient to entitle him to relief under 28 U.S.C. § 2255." Id.
 
 
 16
 This court's recharacterization of the Rule 33 Motion follows the well-established practice of construing a pro se party's pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972) (per curiam) (allegations of pro se motioner, "however inartfully pleaded," are subject to "less stringent standards than formal pleadings drafted by lawyers"); see, e.g., United States v. Cooper, 725 F.2d 756, 757 n. 1 (D.C.Cir.1984) (per curiam) (disregarding untimeliness of prisoner's third § 2255 motion because first two motions were pro se). Before the AEDPA and in accordance with this practice, "district courts routinely converted post-conviction motions of prisoners who unsuccessfully sought relief under some other provision of law into motions made under 28 U.S.C. § 2255 and proceeded to determine whether the prisoner was entitled to relief under that statute." Adams v. United States, 155 F.3d 582, 583 (2d Cir.1998) (per curiam); see, e.g., United States v. Tindle, 522 F.2d 689, 692-93 (D.C.Cir.1975) (per curiam) (affirming district court's treatment of untimely motion for new trial alleging ineffective assistance as § 2255 motion).
 
 
 17
 The AEDPA significantly changed the landscape. The final paragraph of section 2255 and section 2244(b) of Title 28, both included in the AEDPA, replace the abuse-of-the-writ doctrine[10] with statutory requirements that bar second or successive section 2255 motions absent exceptional circumstances and certification by an appellate court.[11] Recognizing this change, the Second Circuit observed:
 
 
 18
 If a district court receiving a motion under some other provision of law elects to treat it as a motion under § 2255 and then denies it, that may cause the movant's subsequent filing of a motion under § 2255 to be barred as a "second" § 2255. Thus a conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated. The court's act of conversion which we approved under pre-AEDPA law because it was useful and harmless might, under AEDPA's new law, become extraordinarily harmful to a prisoner's rights. A prisoner convicted pursuant to unconstitutional proceedings might lose the right to have a single motion for habeas corpus adjudicated, solely by reason of a district court's having incorrectly recharacterized some prior motion as one brought under § 2255.
 
 
 19
 Adams, 155 F.3d at 583-84 (footnote omitted).
 
 
 20
 To minimize the risk, the Second Circuit imposed a protocol for district courts to use in deciding whether to convert a post-conviction motion made under a different provision into a section 2255 motion, declaring:
 
 
 21
 [D]istrict courts should not recharacterize a motion purportedly made under some other rule as a motion made under § 2255 unless (a) the movant, with knowledge of the potential adverse consequences of such recharacterization, agrees to have the motion so recharacterized, or (b) the court finds that, notwithstanding its designation, the motion should be considered as made under § 2255 because of the nature of the relief sought, and offers the movant the opportunity to withdraw the motion rather than have it so recharacterized.
 
 
 22
 Adams, 155 F.3d at 584; see also United States v. Emmanuel, 288 F.3d 644, 649 (4th Cir.2002) (adopting informed consent/notice approach similar to Adams); United States v. Seesing, 234 F.3d 456, 464 (9th Cir.2000) (same); United States v. Kelly, 235 F.3d 1238, 1242 (10th Cir.2000) (same); United States v. Miller, 197 F.3d 644, 652 (3d Cir.1999) (adopting expanded Adams notice approach). While acknowledging the fairness concerns raised by Adams and others, the First and Seventh Circuits have adopted a slightly different "ameliorative" approach.[12] Reluctant to eliminate the recharacterization practice and concerned about imposing additional burdens on already "overburdened district courts," the First Circuit held that "when a district court, acting sua sponte, converts a post-conviction motion filed under some other statute or rule into a section 2255 motion without notice and an opportunity to be heard (or in the alternative, the pleader's informed consent), the recharacterized motion ordinarily will not count as a `first' habeas motion sufficient to trigger AEDPA's gatekeeping requirements." Raineri v. United States, 233 F.3d 96, 100 (1st Cir.2000); see also Henderson v. United States, 264 F.3d 709, 711 (7th Cir.2001) ("we won't deem a Rule 33 (or other mislabeled motion) a section 2255 motion unless the movant has been warned about the consequences of his mistake"); United States v. Lemon, 2001 WL 1628651, *3 (D.Minn.2001) (adopting Raineri approach). Without citing specific examples, the First Circuit found that "there are times, even after AEDPA, when recharacterization will be to a pro se litigant's benefit, or in the interests of justice, or otherwise plainly warranted." 233 F.3d at 100. The court was concerned that the Adams "protocol" approach would "los[e] the baby along with the bath water" in discouraging district courts from using a sometimes useful practice by "forcing them to jump through extra hoops." Id. Because we conclude that the "protocol" approach will not unnecessarily burden the court, nor prevent it from using recharacterization where beneficial (assuming it is done with the movant's knowledge and consent), we conclude that the court may recharacterize a post-conviction motion made under another rule or law as a section 2255 motion only if it first ensures that the movant is fully informed of section 2255's restriction on second or successive 2255 motions as well as other procedural hurdles implicated by recharacterization and the court offers the movant an opportunity to withdraw his motion.[13] We endorse the Fourth Circuit's instruction that "[t]he notice to the movant shall set a reasonable period of time for the prisoner to respond to the court's proposed recharacterization and shall advise the prisoner that failure to respond within the time set by the court will result in the original petition being recharacterized as a § 2255 petition." Emmanuel, 288 F.3d at 649. Thus, where, as here, a movant's post-conviction filing has been recharacterized without using the protocol, the recharacterized motion will ordinarily not function as a first petition for the purpose of determining whether the section 2255 motion under review is a second or successive one.
 
 
 23
 Recently, the Eleventh Circuit, which originally followed the First Circuit's "ameliorative" approach,[14] vacated its earlier opinion and replaced it with one reaching the opposite result. See Castro v. United States, 290 F.3d 1270 (11th Cir. May 7, 2002) (Castro II). As Palmer did here, Castro filed pro se a pre-AEDPA motion for a new trial based upon newly discovered evidence, which the district court treated as both a Rule 33 motion and a section 2255 motion. Reversing course, the Eleventh Circuit took issue with Raineri, stating that to "relieve an entire class of motioners from any restriction at all on the filing of a second motion simply because their first motions had been recharacterized... might undermine the congressional purpose behind the AEDPA, which is to limit successive § 2255 motions." Id. at 1274. The Castro II majority, while dismissing Castro's motion as successive, then noted that "in future cases where the motioner is not filing a second motion, but rather is asking to withdraw his motion or to include additional claims after a district court has decided to recharacterize the initial motion as a § 2255 motion, we would agree with a clear majority of the circuits that the district courts should warn prisoners of the consequences of recharacterization and provide them with the opportunity to amend or dismiss their filings." Id. (emphasis added). The reason for this distinction eludes us.[15] How would a petitioner like Palmer, unaware of the consequences of a court's sua sponte recharacterization, know either to withdraw his motion or to amend it to include additional claims?[16]
 
 
 24
 The government, acknowledging the weight of authority against it, argues that Palmer knew that our recharacterization of the Rule 33 Motion could limit his future options. Palmer's failure to challenge the recharacterization in his petition for rehearing en banc, according to the government, stands in contrast to his July 1, 1996 motion to dismiss the FPD 2255 Motion, wherein he stated that "the federal defender's office has placed defendant with possibilities of any further motion being denied as successive." July 5, 1996 Palmer Motion to Dismiss at 2. We are not persuaded. First, the government, in effect, is arguing that Palmer fully understood the pitfalls of the AEDPA's successive bar rule even though this court, it appears, did not. Second, simply because Palmer may have realized that the FPD 2255 Motion could impair any future section 2255 motion does not mean that he was also aware that his Rule 33 motion could be changed into a "first" section 2255 motion without his consent by an appellate court deciding his appeal of the dismissal of the motion as untimely. In addition, this court stated that the Rule 33 Motion "can be" treated as a section 2255 motion, not that it was formally so recharacterized, making the likelihood that Palmer fully understood the consequences of the ruling even more remote. See Palmer, 97 F.3d at 593.
 
 
 25
 The government also argues that the Rule 33 Motion was not a bona fide motion for a new trial because it raised both constitutional claims and ineffective assistance and prosecutorial misconduct claims. See Gov't Brief at 21. This argument contradicts the government's original stance. In opposing Palmer's appeal of the district court's dismissal of the Rule 33 Motion, the government focused on the motion's untimeliness and on the fact that it did not present "newly discovered" evidence, treating Palmer's alleged constitutional/statutory claims in a footnote. See May 29, 1996 Government Brief in appeal of denial of Motion for New Trial at 8-12 & n.8. In particular, the government's brief stated that an ineffective assistance claim "was not raised in [Palmer]'s new trial motion and is therefore not properly before this court." Id.
 
 
 26
 Moreover, the circumstances here are easily distinguishable from those presented in United States v. Evans, 224 F.3d 670, 673 (7th Cir.2000), the only case the government cites for its "bona-fide" inquiry.[17] In Evans, the prisoner, having already filed a twelve-issue § 2255 motion that the court rejected, attempted to avoid the successive motion bar by designating his new motion as a new trial motion. Id. In that motion, his "new evidence" was that the prosecution had failed to disclose evidence in violation of due process. The court held that a "defendant whose argument is not that newly discovered evidence supports a claim of innocence, but instead that he has new evidence of a constitutional violation or other ground of collateral attack is making a motion under § 2255 (or § 2254) no matter what caption he puts on the document." Id. at 674. Distinguishing Evans's new trial motion, the court stated that "a bona fide motion for a new trial on the basis of newly discovered evidence falls outside § 2255 ¶ 1 because it does not contend that the conviction or sentence violates the Constitution or any statute." Id. at 673-74. The focus of Palmer's new trial motion, in contrast, was the "new evidence" that he did not own the guns that were alleged to be his at trial. References to ineffective assistance and prosecutorial misconduct were, at most, Palmer's attempts to demonstrate prejudice from the failure to present that evidence at trial. Moreover, because Palmer's new trial motion predated the AEDPA, he did not file the Rule 33 Motion to avoid AEDPA's procedural restrictions, as the movants in Evans and Tolliver did.[18] Finally, the inquiry is unnecessary in light of the court's adoption of the protocol approach; Palmer was not a beneficiary of the protocol and therefore, whether his Rule 33 Motion was bona fide or not, our recharacterization of it does not convert it into Palmer's first section 2255 motion.
 
 
 27
 In sum, having denominated his filing a motion for new trial based on newly discovered evidence under Rule 33, Palmer was entitled to have his motion decided under that rule. We could have affirmed its denial as either untimely or meritless. Because Palmer was not given notice of the potential adverse consequences flowing from this court's construction of his motion as a section 2255 motion, we reverse the district court's order dismissing Palmer's petition to vacate his conviction as a successive section 2255 motion under the AEDPA and remand for further proceedings consistent with this opinion.
 
 
 28
 
 So ordered.
 
 
 
 
 Notes:
 
 
 [1]
 The order stated: "Upon consideration of defendant's motion for documents and for new trial, good cause not having been shown, and the record herein; it is ... ORDERED that defendant's petitions be and they are hereby denied." December 5, 1996 Order
 
 
 [2]
 InBailey the United States Supreme Court defined "use" of a firearm under 18 U.S.C. § 924(c)(1) to mean that the defendant "actively employed the firearm during and in relation to the predicate crime." Bailey, 516 U.S. at 150, 116 S.Ct. at 509. Thus, a conviction of "using" a firearm under section 924(c)(1) "requires more than a showing of mere possession." Id. at 144, 116 S.Ct. at 506.
 
 
 [3]
 TheFPD 2255 Motion also requested leave to supplement with supporting points and authorities, necessitated by the "recently enacted statute of limitations on the filing of habeas corpus petitions, see Terrorism Prevention Act, Sec. 105, and upon the fact that the Federal Public Defender's Office has identified over two-hundred cases in which relief may he warranted in light of the Supreme Court's recent decision in Bailey." FPD 2255 Motion at 1.
 
 
 [4]
 The abuse of the writ doctrine is further explainedinfra at 17 note 10.
 
 
 [5]
 Section 2244 prohibits the filing of a second or successive habeas application absent exceptional circumstancesSee infra at 14 n. 12.
 
 
 [6]
 On May 9, 2002 we granted the FPD's petition for appointment to represent Palmer, finding that the "interests of justice warrant appointment of counsel." April 6, 2000 Order (per curiam)
 
 
 [7]
 The Court inLindh found evidence of congressional intent from the fact that section 107, which creates an entirely new chapter 154 with special rules for habeas proceedings in state capital cases, provides that "Chapter 154 ... shall apply to cases pending on or after the date of enactment of this Act." 110 Stat. 1226. The Court concluded that section 107(c)'s applicability to all cases pending at enactment indicates by implication that the AEDPA amendments to chapter 153 of Title 28 (which includes section 2255) "were assumed and meant to apply to the general run of habeas cases only when those cases had been filed after the date of the Act." Lindh, 521 U.S. at 327, 117 S.Ct. at 2063.
 
 
 [8]
 Palmer claims that because he moved to amend theFPD 2255 Motion, filed pre-AEDPA, that motion is not governed by AEDPA's successive bar rule. This argument assumes, however, that Rule 15 allows an amendment like this to relate back to the FPD 2255 Motion. In a similar context, a number of circuit courts have held that an untimely amendment to a section 2255 motion (i.e., one filed after AEPDA's one-year statute of limitations) that clarifies or amplifies a claim or theory in the original motion may, in the district court's discretion, relate back to the original motion if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to press a new theory. See, e.g., Pittman, 209 F.3d at 317; United States v. Thomas, 221 F.3d 430, 433-34 (3d Cir.2000); United States v. Duffus, 174 F.3d 333, 337 (3d Cir.), cert. denied, 528 U.S. 866, 120 S.Ct. 163, 145 L.Ed.2d 138 (1999). Whether an amendment to a section 2255 motion relates back to avoid the AEDPA's one-year statute of limitations is analogous to whether the Palmer 2255 Motion relates back to the FPD 2255 Motion. Both are procedural bars triggered by time limitations.
 The circuit courts that have addressed the "relation back" issue have found that an untimely section 2255 claim can relate back under Rule 15(c) if the untimely claim has more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings. Compare Pruitt v. United States, 274 F.3d 1315, 1319 (11th Cir.2001); Pittman, 209 F.3d at 317-18; Duffus, 174 F.3d at 335; with Williams v. Vaughn, 3 F.Supp.2d 567, 570 (E.D.Pa.1998) ("both motions allege constitutional defects surrounding the same `occurrence' — motioner's trial and penalty phases"). The untimely claim must arise from the "same set of facts" as the timely filed claim, not from separate conduct or a separate occurrence in "both time and type." Pittman, 209 F.3d at 318 (internal quote omitted). In Pittman the Fourth Circuit found that the amended claims of ineffective assistance arose out of different conduct and transactions from those addressed in Pittman's first motion that challenged the district court's jurisdiction and the imposition of an enhanced sentence. See Pittman, 209 F.3d at 318. Although we do not reach the issue here, it appears that most of the claims raised in the Palmer 2255 Motion would likely fail the same conduct/occurrence test vis-a-vis the FPD 2255 Motion, which raised a Bailey claim.
 
 
 [9]
 One basis for the district court's decision could be that theFPD 2255 Motion was filed without Palmer's consent and thus the court might have thought it invalid. Another could be that Palmer's motion to dismiss the FPD 2255 Motion was self-executing under Fed.R.Civ.P. 41(a)(1) ("[A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or a motion for summary judgment" (emphasis added)). The government had not responded to the FPD Motion when Palmer filed his notice of dismissal.
 
 
 [10]
 Pre-AEDPA, if a defendant filed a second section 2255 petition, the government could defend on "abuse of the writ," whereupon the defendant had to show cause for failing to raise the claim earlier,i.e., "some objective factor external to the defense [that] impeded counsel's efforts," as well as demonstrate "actual prejudice resulting from the errors of which he complains." McCleskey v. Zant, 499 U.S. 467, 493-94, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991) (quotations omitted). Were we to conclude that the Palmer 2255 Motion was governed by pre-AEDPA law, we would nonetheless have to resolve whether our treatment of the Rule 33 Motion as a section 2255 motion required him to satisfy the "cause and prejudice" standard before we could consider his current 2255 motion. See United States v. Ortiz, 136 F.3d 161, 163-64 (D.C.Cir.1998) (applying AEDPA to petitioner who filed first petition to vacate before AEDPA but second motion after AEDPA not impermissibly retroactive because he would not have prevailed under McCleskey "cause and prejudice" standard).
 
 
 [11]
 Section 2255 provides:
 A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain —
 (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
 (2) a new rule of constitutional law, made retroactive, to cases on collateral review by the Supreme Court, that was previously unavailable.
 28 U.S.C. § 2255. Section 2244 provides for the certificate of appealability (COA) as follows:
 (b)(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless —
 (A) an applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
 (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
 (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the movant guilty of the offense.
 (3)(A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.
 28 U.S.C. § 2244(b)(2)-(3)(A).
 
 
 [12]
 Until very recently, the Fifth Circuit's decision inIn re Tolliver, 97 F.3d 89 (5th Cir.1996), was the only authority to the contrary. There, Tolliver, in an untitled filing, moved to dismiss his conviction for using or carrying a firearm in relation to a drug crime in violation of 18 U.S.C. § 924(c) based on Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which the district court sua sponte and over Tolliver's objection construed as a section 2255 motion. The court denied Tolliver's successive section 2255 motion and thus upheld the district court's recharacterization, stating that "[w]hile Tolliver objected to the district court's construing it as a § 2255 motion, there is nothing else it could be." Tolliver, 97 F.3d at 90. In light of the overwhelming weight of authority since Tolliver as well as the persuasive rationale of that authority, we decline to follow Tolliver.
 
 
 [13]
 One example of such a hurdle is the AEDPA one-year statute of limitations periodSee 18 U.S.C. § 2255 ¶ 6.
 
 
 [14]
 See Castro v. United States, 277 F.3d 1300, 1305 (11th Cir. January 2, 2002) ("district court's recharacterization of a petitioner's initial post-conviction petition will not be considered a `first' habeas petition for AEDPA purposes unless the petitioner is given notice of the consequences of such recharacterization").
 
 
 [15]
 The dissent inCastro II noted that "[w]e have found no case in which a pre-AEDPA petition that was `converted' by the court and then denied barred a second post-AEDPA § 2255 petition." Castro II, 290 F.3d 1270, 1275 (Roney, J., dissenting).
 
 
 [16]
 Moreover,Castro II's homage to congressional intent seems, to us, ill-founded. Nothing in the AEDPA indicates that a post-conviction motion not styled as a section 2255 motion must be deemed one simply because it could be so styled. Indeed, the AEDPA does not define a "second or successive" motion at all. But not every post-conviction motion is properly considered a "second or successive" filing in the AEDPA sense. See, e.g., Stewart v. Martinez-Villareal, 523 U.S. 637, 644-45, 118 S.Ct. 1618, 1621-22, 140 L.Ed.2d 849 (1998) (movant's claim that he was incompetent to be executed, raised for the second time after his first claim was dismissed as premature, not "second or successive" motion under AEDPA).
 
 
 [17]
 We note that only the Seventh Circuit inquires into the legitimacy of a Rule 33 motion recharacterized as a section 2255 motion. In this regard, the Seventh Circuit itself appears split. InHenderson, it conducted no inquiry into whether the Rule 33 motion was bona fide, stating that "[n]othing in the AEDPA says that a motion not labeled as a section 2255 motion shall nevertheless be deemed one if it could have been so labeled accurately. This is a purely judge-made rule, and so its contours are up to the judges to draw. All we hold today ... is that we won't deem a Rule 33 (or other mislabeled motion) a section 2255 motion unless the movant has been warned about the consequences of this mistake." Henderson v. United States, 264 F.3d at 711. One month before its Henderson decision, however, the court did look into whether the Rule 33 motion was "in substance" within the scope of section 2255 and thus appropriately recharacterized. See Ruth v. United States, 266 F.3d 658, 660-61 (7th Cir.2001) (concluding that Rule 33 motion was bona fide and thus was not properly recharacterized as § 2255 motion).
 
 
 [18]
 TheEvans holding includes a relevant caveat: "One caveat is in order. Our case is easy because Evans filed a motion explicitly under § 2255, then tried to evade the limitations on successive motions by placing a Rule 33 caption on his next collateral attack.... When a prisoner who has yet to file a petition under § 2255 invokes Rule 33 but presents issues substantively within § 2255 ¶ 1, the district court should alert the movant that this can preclude any later collateral proceedings and asks whether the prisoner wishes to withdraw the claim.... We postpone, until the occasion requires, deciding what should happen if a district judge fails to deliver that advice, denies the Rule 33 petition on the merits, and the prisoner then files what would otherwise be a timely § 2255 motion." Evans, 224 F.3d at 674-75; see also Palmer Reply Br. at 10-11.